[No. B183901. Second Dist., Div. Three. May 9, 2006.]

ROLAND RICHARDS, Plaintiff and Appellant, v.
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Defendant and
Respondent.

308

COUNSEL

Law Offices of Leo James Terrell and Leo James Terrell for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Marsha S. Miller and Kenneth G. Lake, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**CROSKEY, J.**—Roland Richards, owner of a restaurant and supper club known as the Atlas Bar and Grill, appeals a summary judgment in favor of the Department of Alcoholic Beverage Control (Department). He contends the Department acted in an arbitrary and discriminatory manner in revoking or suspending an alcoholic beverage license issued to the prior owner and in causing the prior owner to surrender the license. We conclude that Richards's failure to apply for a transfer of the license or for an original license was a failure to exhaust an administrative remedy and is a complete defense to this action. We also conclude that the Department established a complete defense based on other independently sufficient grounds. We therefore affirm the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

The Department first issued a license for the sale of alcoholic beverages at the Atlas Bar and Grill sometime before 2000. The licensee was Atlas Bar & Grill, Limited Partnership. Atlas One, Inc., was the general partner of the limited partnership. Richards purchased the business and the license in or about November 2002. The initial purchase and sale agreement stated that Richards was acquiring the limited partnership itself, including the business and the license, but that he was not acquiring any stock of Atlas One, Inc. The agreement later was amended to convey all of the stock of Atlas One, Inc., to Richards. The written amendments are not included in the appellate record. Richards did not apply to the Department for a transfer of the license at any time.

The Department sent a warning letter addressed to the limited partnership at the restaurant premises in February 2003 stating that the police had reported several activities that constituted violations of the license conditions. Richards admits that when the police or the Department contacted him regarding alleged violations, he falsely informed them that he was the manager and not the owner.[1] The Department filed an accusation against the limited partnership as licensee in June 2003 alleging that the licensee had sold alcoholic beverages from bottles contaminated with insects and debris. The police also reported to the Department other violations of law occurring at the premises, including violent altercations.

---

[1] Richards misconstrues these facts in an effort to support his argument that the Department recognized him as the licensee and should be estopped to claim otherwise. Contrary to Richards's argument, the undisputed evidence shows that the Department never recognized him as the licensee and that there is no basis for an estoppel.

Richards met with Vincent Cravens and Hilarie Vazquez of the Department to discuss their concerns in or about November 2003. At the meeting, Richards admitted that he was the owner. Cravens and Vazquez informed Richards that he must apply to the Department to transfer the license, that he was not authorized to sell alcoholic beverages at the premises without a license, and that they would pursue a surrender of the license. Richards testified in a deposition, "And right there at that very moment I was informed from that very minute of that discussion they were suspending my liquor license." John Tamayo on behalf of the limited partnership later surrendered the license in December 2003.

Meanwhile, the limited partnership and Alvaro Tamayo filed a complaint against Richards and others in November 2003 alleging several counts, including breach of the purchase and sale agreement and breach of a later agreement, seeking judicial foreclosure of real and personal property and other remedies. Richards and others filed a cross-complaint against the limited partnership, Alvaro Tamayo, and John Tamayo alleging various counts arising from the purchase and sale of the business.

## 2. Trial Court Proceedings

Richards filed a complaint against the Department in May 2004 and filed a first amended complaint on October 5, 2004. Neither complaint was included in the appellate record. We have obtained and now augment the appellate record to include the first amended complaint, in which Richards alleges that he acquired the license by purchasing the Atlas Bar and Grill, and that "Said license was transferred to Plaintiff Roland Richards." Richards alleges that "his liquor license" was "summarily revoked" in November 2003 without prior warning and that he "was not given any rights to appeal the revocation of his liquor license." He alleges counts against the Department for (1) violation of article I, sections 1 to 31 of the California Constitution; (2) negligent hiring and supervision of employees; (3) abuse of process; (4) intentional interference with contract or prospective economic advantage; and (5) intentional infliction of emotional distress, and seeks money damages on each count.

The Department moved for summary judgment or summary adjudication arguing that (1) Richards has no standing to sue the Department because he never applied for a transfer of the license; (2) he failed to exhaust his administrative remedies; (3) he cannot maintain an action for damages based on the alleged violations of the state Constitution; (4) the Department as a

public entity is not subject to liability for common law negligence, abuse of process, or the other common law torts alleged in the complaint; (5) the Department is immune from liability for injury caused by its prosecutorial activities pursuant to Government Code sections 821.6 and 815.2; (6) the Department is immune from liability for injury caused by the issuance, denial, suspension, or revocation of a license pursuant to Government Code section 818.4; and (7) the Department is immune from liability for injury caused by a public employee's exercise of discretion, including any abuse of discretion, pursuant to Government Code section 820.2. The Department filed declarations by Cravens and Vazquez and other evidence in support of the motion.

Richards argued in opposition that his purchase of the business effected a transfer of the license, that the Department had recognized a prior transfer of the same license effected in the same manner, and that the Department was subject to liability for the counts alleged and was not immune. Richards filed a declaration by his attorney attaching 475 pages of exhibits in opposition to the motion. Richards also filed objections to the Cravens and Vazquez declarations.

In a minute order filed on May 4, 2005, the court overruled Richards's evidentiary objections, granted the summary judgment motion "on the grounds set forth therein," and directed the Department to prepare a proposed order. The minute order also stated, "The Court sustains moving party's objections to evidence filed April 15, 2005." It is unclear from the appellate record whether the Department filed a separate document containing evidentiary objections on that date or whether the court was referring to a statement in the Department's reply memorandum filed on that date asserting an objection "to the ordering and organization" of documents attached to the declaration of Richards's counsel "to the extent plaintiff asserts this ordering of documents has any particular significance." Richards filed a notice of appeal from the order granting summary judgment on June 9, 2005.[2] The court filed an order granting summary judgment on June 27, 2005, and entered a judgment the same day. The order stated that the motion was granted based on the grounds set forth in the Department's moving papers, specified those grounds, and restated the rulings on evidentiary objections.

---

[2] The notice of appeal was premature because an order granting summary judgment is nonappealable. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7 [134 Cal.Rptr.2d 138].) We regard the notice of appeal as an appeal from the judgment later entered and treat the notice as if it were filed immediately after the entry of judgment. (Cal. Rules of Court, rule 2(e).)

## CONTENTIONS

Richards contends (1) the license was transferred to him as a matter of law when he acquired the business and all of its assets; (2) he exhausted his administrative remedy by presenting a claim pursuant to Government Code section 915; (3) he is excused from the exhaustion requirement because he "was not given any rights to appeal the revocation of his liquor license," as alleged in the complaint, because further pursuit of an administrative remedy would have been futile, and because he suffered an irreparable injury in the failure of his business; (4) the statutory bases to impose liability on the Department as a public entity are Government Code section 945.4, which allows a suit for damages after the rejection of a claim, and the Alcoholic Beverage Control Act (Bus. & Prof. Code, § 23000 et seq.); (5) the count for violation of the state Constitution states a valid cause of action against the Department based on the denial of due process; (6) the Department can be held liable for common law torts committed by its employees within the scope of their employment pursuant to Government Code sections 820, subdivision (a) and 815.2, subdivision (a); and (7) Vazquez lacked personal knowledge to make certain statements in her declaration and other statements contradicted her deposition testimony, so the overruling of his objections to the declaration was error.

## DISCUSSION

### 1. *Standard of Review*

A party is entitled to summary judgment if under the undisputed facts or facts as to which there is no reasonable dispute the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (*Ibid.*) The court must view the evidence and reasonable inferences from the evidence in the light most favorable to the opposing party. (*Aguilar, supra,* at p. 843.)

We review the trial court's ruling de novo and apply the same legal standard that governs the trial court. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67–68 [99 Cal.Rptr.2d 316, 5 P.3d 874].) We affirm the ruling if it is correct on any ground, regardless of the trial court's stated reasons. (*Truck Ins. Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 20 [115 Cal.Rptr.2d 179].)

2. *Richards's Purchase of the Business Did Not Transfer the License to Him*

■ Article XX, section 22 of the California Constitution grants the Department the exclusive power "to license the manufacture, importation and sale of alcoholic beverages in this State." (*Ibid.*) Section 22 grants the Department the discretion to deny, suspend, or revoke a license in the interest of "public welfare or morals" or if the person holding or seeking a license has committed a violation of law involving moral turpitude, and states that it is "unlawful for any person other than a licensee of said department to manufacture, import or sell alcoholic beverages in this State." (*Ibid.*) ■ The Alcoholic Beverage Control Act (Act) also states that no person may perform any act for which a license is required under the Act unless the person is so authorized under a license. (Bus. & Prof. Code, § 23300.)

■ The Act provides for the transfer of a license from the licensee to another person only upon approval by the Department. "Each license is separate and distinct and is transferable *upon approval by the department* from the licensee to another person and from one premises to another premises." (Bus. & Prof. Code, § 24070, italics added.) ■ "Upon receipt of an application for a license or for a transfer of a license and the applicable fee," the Department must thoroughly investigate the applicant's qualifications and compliance with the Act's requirements (*id.*, § 23958), must notify local law enforcement officials and local governing bodies of the application, and cannot issue or transfer a license until at least 30 days after mailing the notices (*id.*, § 23987). The applicant for a transfer may apply for a temporary permit pending approval of the transfer application. (*Id.*, § 24045.5.)

■ In addition to the general provision in Business and Professions Code section 24070 quoted *ante*, the Act includes specific provisions governing certain types of transfers, including a transfer upon a change of ownership of 50 percent or more of the shares of stock of a corporation (*id.*, § 24071.1, subd. (a) [stating, "the license of the corporation shall be transferred to the corporation as newly constituted"]). Despite the seemingly mandatory language of section 24071.1, sections 24070, 23958, and 23987, prior opinions, and the Department's regulations make it clear that a transfer is effective only upon approval by the Department of a transfer application.

■ The California Supreme Court has stated, "all transfers are subject to official investigation and approval in the same manner as the initial issuance of a license. (Bus. & Prof. Code, §§ 24070, 23958, 23987, 23988.) Indeed,

the omission of a provision for such approval in the private agreement of the parties does not affect the need for official sanction. [¶] The requirement for such approval is an implied condition of all agreements for the transfer of alcoholic beverage licenses, whatever the context and whatever the nature of the consideration. [Citations.]"[3] (*Greve v. Leger, Ltd.* (1966) 64 Cal.2d 853, 859 [52 Cal.Rptr. 9, 415 P.2d 824].) "The Department of Alcoholic Beverage Control, not the parties, transfers licenses. The parties, denominated the 'licensee' and the 'intended transferee' merely apply to the department for a transfer. [Citations.]" (*Harriman v. Tetik* (1961) 56 Cal.2d 805, 812 [17 Cal.Rptr. 134, 366 P.2d 486].)

Moreover, the Department's regulations provide for the transfer of a license only upon approval of an application, payment of a transfer fee, and issuance of a license certificate to the transferee:[4]

"(a) Subject to the provisions of law and of the department's rules limiting the number of licenses which may be issued in any county, licenses may be transferred from person to person and from premises to premises within the same county upon a single transfer application.

"(b) The transferee shall make application to the department for a license of the type to be transferred and shall meet all the qualifications required of an original applicant for such license. The transferor shall join in the application.

"(c) The transfer fee shall be paid by the transferee and shall accompany the application. . . .

"(d) In the absence of a temporary permit, the transferee shall not exercise any of the privileges of a licensee until the license is transferred by the issuance of a license certificate to the transferee. The transferor shall not permit the transferee to exercise any of the privileges of his license until the license is transferred." (Cal. Code Regs., tit. 4, § 60.)

■ These authorities make it clear that the purchase of the business did not effect a transfer of the license to Richards and that a transfer could be effective only upon approval of an application made to the Department. Richards never became a licensee because he never applied for a license.

---

[3] Former Business and Professions Code section 23988, since repealed, provided for a protest by a local governing body to the issuance or transfer of a license and a public hearing on the protest. (Stats. 1955, ch. 447, § 67, p. 912.) Current section 24013 now provides for protests by local governing bodies and other persons.

[4] The Department has enacted regulations pursuant to the authority granted by the Legislature in Business and Professions Code section 25750, subdivision (a).

He therefore never suffered a revocation or suspension of what he calls "his license." This compels the conclusion that the appropriate remedy for Richards was to apply for a transfer of the license or for an original license, as we shall explain.

### 3. *Richard Failed to Exhaust His Administrative Remedy*

■ A party ordinarily must exhaust an administrative remedy available before seeking judicial relief. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321 [25 Cal.Rptr.3d 320, 106 P.3d 976].) The exhaustion of an administrative remedy requires a party to seek relief from the administrative agency and obtain a decision from the final administrative decision maker before suing in court. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 [29 Cal.Rptr.3d 234, 112 P.3d 623].) The exhaustion requirement affords the administrative agency an opportunity to provide the relief requested in whole or in part, so as to avoid costly litigation or reduce the scope of litigation. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d 543]; *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410].) The exhaustion requirement also facilitates the development of a complete factual record and allows the agency to apply its expertise, both of which can assist later judicial review, if necessary. (*Campbell, supra,* at p. 322; *Sierra Club, supra,* at p. 501.)

■ Richards cites no authority to support his contention that the presentation of a claim under the California Tort Claims Act (Gov. Code, § 810 et seq.) in lieu of pursuing an administrative remedy established by the Department satisfied the exhaustion requirement. The presentation of a claim pursuant to the Tort Claims Act is a separate, additional prerequisite to commencing an action against the state or a local public entity and is not a substitute for the exhaustion of an administrative remedy. (See *Bozaich v. State of California* (1973) 32 Cal.App.3d 688, 698 [108 Cal.Rptr. 392].)

Richards complains that the Department revoked or suspended "his license" and caused the prior owner to surrender the license. Yet Richards never applied to the Department for a transfer of the license, or for an original license, either at the time he first began to operate the business or at any time thereafter. Richards could have applied for a transfer even after the limited partnership surrendered its license.[5] If the Department had denied his

---

[5] "(a) Every licensee who surrenders, abandons or quits his licensed premises, or who closes his licensed business for a period exceeding 15 consecutive calendar days, shall, within 15 days after closing, surrendering, quitting, or abandoning his licensed premises, surrender his license or licenses to the department. The department may seize the license certificate or

application, Richards could have petitioned the Department to review the denial and would have been entitled to a hearing. (Bus. & Prof. Code, §§ 24011, 24012.) He could have appealed the Department's final decision to the Alcoholic Beverage Control Appeals Board (*id.*, § 23081), and the decision by the appeals board would have been subject to judicial review (Cal. Const., art. XX, § 22; Bus. & Prof. Code, § 23090).[6] His failure to seek relief from the Department by submitting an application was a failure to exhaust an administrative remedy.

Courts recognize certain established exceptions to the exhaustion requirement, including where the administrative remedy is inadequate or where pursuit of the administrative remedy would be futile or would result in irreparable injury. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.*, *supra*, 35 Cal.4th at pp. 1080–1081; *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 342 [124 Cal.Rptr. 513, 540 P.2d 609]; *Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 170–171 [6 Cal.Rptr.2d 714].) Richards contends no administrative remedy could have granted adequate relief after his business failed as a result of losing "his license" and alleges in his complaint that he "was not given any rights to appeal the revocation of his liquor license." To the contrary, we conclude that an administrative remedy was available to Richards long before he was told to stop selling alcoholic beverages without a license, that the remedy included a right of appeal as discussed *ante*, and that he has neither alleged facts nor presented evidence sufficient to show that the remedy was inadequate or that pursuit of the remedy would have been futile or would have resulted in irreparable harm.

The failure to exhaust an administrative remedy is an independently sufficient ground to affirm the summary judgment.

---

certificates of any licensee who fails to comply with the surrender provisions of this rule, and may proceed to revoke his license or licenses. [¶] . . . [¶] (d) Any license voluntarily surrendered under paragraph (a) of this rule shall be revoked if it is not transferred to another person or for use at another premises, or redelivered and the licensed activity resumed, within one year from the date of such surrender." (Cal. Code Regs., tit. 4, § 65.)

[6] Even if the Department improperly had revoked or suspended "his license" as Richards maintains, he would have been required to appeal the decision to the appeals board rather than sue directly in court. (*Cardoso v. Dept. Alcoholic Bev. Control* (1958) 162 Cal.App.2d 277, 278–279 [327 P.2d 591].)

4. *The Department Established an Additional Complete Defense to Each Count*

a. *Constitutional Count*

 The Department established an additional complete defense to each count apart from Richards's failure to exhaust an administrative remedy. The first count alleges a violation of article I, sections 1 to 31 of the state Constitution and seeks only money damages. Although the complaint refers to article I, sections 1 to 31 generally, Richards's argument on appeal with respect to the first count is limited to due process. Article I, section 7, subdivision (a) states in relevant part, "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws." Courts that have carefully considered the question have held that this provision does not authorize an action for money damages to remedy a violation. (*Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 317–329 [127 Cal.Rptr.2d 482, 58 P.3d 339] [due process liberty interest]; *Carlsbad Aquafarm, Inc. v. State Dept. of Health Services* (2000) 83 Cal.App.4th 809, 817–823 [100 Cal.Rptr.2d 87] [due process generally].) Richards does not cite these opinions and offers no basis for us to distinguish their holdings or revisit their conclusions, to the extent we could do so. We therefore conclude that he has not shown error and that summary adjudication of the first count was proper.

b. *Public Entity Immunity*

 The Tort Claims Act provides that a public entity is not liable for an injury "[e]xcept as otherwise provided by statute" (Gov. Code, § 815). (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) The purpose of the Tort Claims Act is not to expand the grounds for public entity liability, but to restrict those grounds to " ' "rigidly delineated circumstances." ' " (27 Cal.4th at p. 1127.) Under the Tort Claims Act, public employees generally are liable for injuries caused by their acts or omissions to the same extent as private persons. (Gov. Code, § 820, subd. (a).) A public entity is vicariously liable for an injury proximately caused by an act or omission of its employee within the scope of employment if the act or omission would give rise to a cause of action against the employee. (Gov. Code, § 815.2, subd. (a).) But a public entity is not vicariously liable if the employee is immune from liability. (*Id.*, subds. (a), (b)).

A public employee acting within the scope of employment is immune from liability for an injury caused by the employee's "instituting or prosecuting any judicial or administrative proceeding . . . even if he acts maliciously and

without probable cause." (Gov. Code, § 821.6.) Courts liberally construe "administrative proceeding" to include investigatory and other activities in preparation for more formal proceedings. (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209–1211 [34 Cal.Rptr.2d 319].) Undisputed evidence shows that the Department's meeting with Richards in which he was told that he was not authorized to sell alcoholic beverages without a license, or in which he was informed that "his license" was revoked or suspended as Richards characterizes it, and the Department's efforts to obtain a surrender of the license were undertaken in connection with the Department's investigation of activities at the premises in violation of the license conditions and its preparation for more formal proceedings to remedy those violations, if necessary. The public employees and the Department (Gov. Code, § 815.2, subd (b)) therefore are immune from liability for any resulting injury.

Moreover, a public entity is immune from liability for an injury caused by the suspension, revocation, issuance, or denial of a license if the public entity is authorized by law to determine whether the license should be suspended, revoked, issued, or denied. (Gov. Code, § 818.4.)[7] The same immunity also applies to a public employee (*id.*, § 821.2)[8] and extends to the employer by virtue of section 815.2, subdivision (b).[9] The immunity applies only to discretionary activities. (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 911–915 [136 Cal.Rptr. 251, 559 P.2d 606], criticized on another point in *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 987, fn. 8 [42 Cal.Rptr.2d 842, 897 P.2d 1320].) The Department enjoys broad discretion with regard to licensing decisions. (Cal. Const., art. XX, § 22; *Martin v. Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 238 [248, 340 P.2d 1].) To the extent Richards challenges the conduct of the Department and its employees as an abuse of the Department's licensing discretion, the Department and its employees are

---

[7] "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." (Gov. Code, § 818.4.)

[8] "A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." (Gov. Code, § 821.2.)

[9] "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (Gov. Code, § 815.2, subd. (b).)

immune. These statutory immunities establish a complete defense to all common law counts alleged in the complaint.[10]

 Richards's reliance on Government Code section 945.4 and the Alcoholic Beverage Control Act as statutory bases for liability is misguided. Section 945.4 states that before filing a suit for money or damages against a public entity, the plaintiff must first present a claim under the Tort Claims Act, and the claim must be acted on by the appropriate body or deemed rejected, if a claim is required to be presented under the act.[11] Section 945.4 establishes a precondition to suit, not a substantive basis for public entity liability. Richards also fails to cite any provision of the Alcoholic Beverage Control Act that provides for public entity liability.

5. *Richards Has Shown No Prejudicial Error in the Overruling of His Evidentiary Objections*

Richards contends the court erred by overruling his objections to the declarations of Cravens and Vazquez, but does not specify or discuss his objections to the Cravens declaration and therefore waives any error with respect to the Cravens declaration. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116 [75 Cal.Rptr.2d 27]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].) Richards argues that Vazquez lacked personal knowledge of the matters stated in her declaration because she did not write the declaration and did not select the documents to be attached to the declaration, and that her deposition testimony contradicted certain statements made in her declaration. Vazquez's deposition testimony that she did not write her declaration and did not select the documents to be attached to the declaration does not show that she had no personal knowledge concerning the matters declared, but only that she did not draft the declaration or decide which documents to reference in the declaration. Moreover, the purported inconsistencies between the Vazquez declaration and her deposition testimony concern immaterial matters and do not create a triable issue of material fact. Summary judgment generally cannot be denied based on lack of credibility alone. (Code Civ. Proc., § 437c, subd. (e).)

---

[10] The Department is immune from liability for the alleged counts for negligent hiring and supervision of employees, abuse of process, intentional interference with contract or prospective economic advantage, and intentional infliction of emotional distress. In light of the statutory immunities, we need not discuss the other defenses asserted.

[11] "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division." (Gov. Code, § 945.4.)

## DISPOSITION

The judgment is affirmed. The Department is entitled to recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.